# APPEAL OF G. W. ROGERS AND H. B. DICKINSON. [ESTATE OF CHARLES STREEPER, A LUNATIC.]

### APPEAL FROM THE DECREE OF THE COURT OF COMMON PLEAS OF MONTGOMERY COUNTY.

Argued February 1, 1888—Decided March 12, 1888.

1. The Court of Common Pleas, having jurisdiction of the accounts of the committee of a lunatic, has no power upon petition and rule granted to order payment by the committee of a disputed demand or a bill for professional services not rendered in the course of the proceedings de lunatico inquirendo.
2. It is the undoubted right, as well of the lunatic debtor through his committee, as of the creditor, to have the validity of the claim and its amount ascertained by due course of law.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 123 July Term 1887, Sup. Ct.

In November, 1886, Charles Streeper was committed to prison upon a charge of assault and battery upon his wife, and at the same time proceedings were instituted to have him declared a lunatic. At the suggestion of one of his friends, Mr. J. R. Hunsicker filed a petition for his discharge upon a writ of habeas corpus, and at the attorney's instance, Drs. A. W. Biddle and Charles K. Mills, of Philadelphia, attended upon the petitioner, made an examination as to his sanity and also attended at court to testify. On hearing upon the writ of

habeas corpus the petitioner was remanded to custody and removed to Ercildowne, a hospital for the insane. The proceedings de lunatico inquirendo resulted in the confirmation of a finding of lunacy and the appointment of Geo. W. Rogers and H. B. Dickinson as a committee of the lunatic's person and estate.

On February 7, 1887, Dr. Biddle presented his petition to the Court of Common Pleas setting out the services rendered by Dr. Mills and himself, with their bill of $50 each, for their examination of Mr. Streeper and $25 to the petitioner for the petitioner's attendance at court. An answer was filed by said committee to a rule granted upon this petition, the respondents disputing that the services were rendered to Mr. Streeper, and denying the jurisdiction of the court to grant the rule and to make a decree in the case. Depositions taken, disclosed, inter alia, that the lunatic's estate was made up of nineteen parcels of real estate in the vicinity of Chestnut Hill, and of personalty aggregating $24,595.

On May 16, 1887, the court, SWARTZ, J., filed the following opinion and decree:

This is an application for an order on the committee in lunacy of the estate of Charles Streeper, to pay $125 for the professional services of Drs. A. W. Biddle and Charles K. Mills.

Charles Streeper was charged with assault and battery and committed to the Montgomery county jail. He was violent, abusive, and threatened his family with bodily harm. Bail was refused on the ground of his violence and alleged insanity. A writ of habeas corpus was taken out and an effort made to obtain his release. Counsel for the relator attempted to show the sanity of the prisoner, and at relator's suggestion employed Dr. A. W. Biddle to make an examination of his mental condition. Dr. Biddle called upon Dr. Mills, an expert on insanity, and together they made an examination of Mr. Streeper in Philadelphia, at an insane asylum where he was then confined. They made a report in writing, and Dr. Biddle presented it to the court at the hearing upon the habeas corpus. Dr. Biddle was also present at a subsequent hearing of the case. These proceedings were prior to the inquisition in lunacy, and the

claimant did not appear before the commission. The inquest found Mr. Streeper insane.

If the services of the claimant formed part of the process by which the lunatic and his estate were put in the custody of the law, it would be the duty of the court to supervise the claim and decree its allowance if manfestly just and moderate. No action would lie against the committee for any of the expenses of the inquisition; this is a matter for the court under a careful supervision: Wier v. Myers, 34 Pa. 377. In the case at bar however, they cannot say that the services of the claimant were rendered in the lunacy proceedings, although it may be argued that the result of the investigation in the habeas corpus proceedings enabled counsel for the alleged lunatic to forego the aid of such medical skill as would otherwise have been necessary.

The claimant should be paid a just and reasonable compensation for his services where proper. It would be a lamentable state of affairs if an alleged lunatic were not allowed to have counsel and witnesses to establish his sanity in the initial proceedings to declare him insane or to commit him to jail. His estate must pay all such expenses incurred on behalf of the petitioner in his efforts to show insanity, and why not in his efforts to show sanity? After a man was once duly adjudged a lunatic it might be otherwise.

How should the claimant proceed to collect his bill? Section 45 of the act of June 13, 1836, P. L. 601, provides: "Every writ for the commencement of an action against a person found to be a lunatic shall be served on the committee, and proceedings may thereupon be had in like manner as if service had been made upon the defendant being of sound mind." The claimant can therefore bring his suit against the committee and prosecute it to judgment. Here however he must stop; he is not entitled to execution. He cannot levy upon any of the property real or personal of the lunatic estate; this is in the custody of the court, and to allow such execution would be taking the estate out of the care and guardianship of the court: Eckstein's Est., 1 Clark 224; Wright's App., 8 Pa. 57.

The object of § 45 of the act of 1836 is to secure to creditors the right of trial by jury; by it their claims can be liquidated,

the amount of their debts established. But the creditor can waive this privilege and proceed direct to the court, if for any reason the committee refuses to pay or declines to take the responsibility of payment. The proceeding is then by citation, and the court will require the committee to file an account for the settlement of claims whenever good cause is shown: Wright's App., 8 Pa. 62.

We shall treat the application as a petition for a citation to show cause why the claim should not be paid. It does not appear that there are other claims pending against the estate and the court is reluctant to order an account. The court, as the custodian of the lunatic's estate, has the authority to direct the committee to pay the claim. The committee is but the agent of the court: Eckstein's Estate, supra.

The charge is excessive, and we consider sixty dollars a fair compensation for the entire services.

And now, May 16, 1887, it is ordered and decreed that the committee in lunacy of Charles Streeper pay out of the income of the lunatic's estate to Dr. A. W. Biddle the sum of sixty dollars for professional services rendered by said A. W. Biddle and Charles K. Mills. By the court.

Exception having been taken to the decree, the respondents took this appeal, assigning as error:

1. The court had no jurisdiction to make the decree they did in this case.

2. The court erred in making the decree directing the committee to pay the claim of A. W. Biddle, it being no part of the costs.

3. The court erred in deciding that they could in this proceeding direct the payment of a claim against the estate of the lunatic.

*Mr. D. Ogden Rogers*, for the appellants:

That the court has the power to direct the payment of costs upon an inquisition de lunatico inquirendo is settled by Clark's Case, 22 Pa. 466. But the court has no power to order payment by the committee of a claim, not costs.

*Mr. Henry C. Boyer*, for the appellee:

Neither the act of June 16, 1836, P. L. 789, nor any other

act takes away the complete chancery jurisdiction of the Court of Common Pleas in the matter of lunatics' estates : Eckstein's Est., 1 Clark 224. So long as the chancellor is willing to take cognizance of any equitable matter, it is immaterial whether it be presented by bill, by petition or upon motion. The committee is but the servant of the court to do its bidding : Eckstein's Est., supra.

OPINION, MR. JUSTICE CLARK :

In Wier v. Myers, 34 Pa. 377, it was held that the committee of a lunatic ought not to be subject to action for any of the expenses of the process by which the lunatic and his estate are put into the custody of the law. " All these expenses," says this court in that case, " ought to be carefully supervised by the court; and, considering the helpless condition of the lunatic, none ought to be allowed except such as are manifestly just and moderate. If the committee is liable to action, he may be sued anywhere, and thus put to very unjust inconvenience and expense, under the forms of law. The court that has the final settlement of the committee's account ought to have the control of the committee's expenditures." But the services of Doctors Biddle and Mills were not rendered in the proceeding de lunatico inquirendo. Streeper had been arrested and was in prison for crime. In order to be relieved from imprisonment he sued out a writ of habeas corpus, and it was in connection with this the alleged services were rendered. It may be said that the criminal act, the arrest, and the issuing of the habeas corpus, led up to the proceedings in lunacy, and that Doctors Biddle and Mills became witnesses in the lunacy case because of the professional knowledge of the case they had acquired in their previous examination ; still, the fact remains, that the services were not rendered in the lunacy case, and their charges cannot be considered as part of the expenses thereof. As well might we embrace the costs of the criminal proceeding and of the habeas corpus and the attorney's charges, in both.

The doctors' charges stand upon the footing of an ordinary debt or demand on the lunatic's estate. If their services were reasonably proper and necessary under the circumstances, and were rendered in good faith, at the instance of the attorney

issuing the habeas corpus, the lunatic would be liable therefor, as for any other necessary and valuable thing done or furnished him. If the liability of the lunatic's estate had been conceded by his committee, and the price or value of the services had been agreed upon, or otherwise lawfully ascertained, the court might have required the committee to raise the necessary funds to discharge the debt. But the demand was disputed by the committee, who alleged that the services, if they were rendered at all, were wholly unauthorized, and that the estate of the lunatic was in no way liable therefor. Under such circumstances, the court would not assume to settle the dispute, or to order the payment of a debt which the committee denied. It was the undoubted right, not only of the creditor, but of the lunatic debtor, through his committee, to have the validity of the claim, and its amount, ascertained by due course of law; and a suit brought with notice to the committee, and prosecuted to judgment, bona fide, would be conclusive as to the amount and merits of the plaintiffs' demand. The judgment thus obtained would, of course, give the creditor no preference by way of lien, nor would it enable him to enforce payment in the ordinary form of execution. The validity of his claim being thus established, and the true amount thereof ascertained, he was entitled to lay it before the court, and ask that its payment should be provided for. The debts of a lunatic are to be paid according to their character at the time of the finding of the inquisition; no preference can be acquired after the property passes in custodia legis.

The order and decree of the Common Pleas, made May 16, 1887, requiring the committee to pay to Dr. A. W. Biddle the sum of sixty dollars for professional services rendered by Doctors Biddle and Mills is therefore reversed, and it is ordered that the appellee, A. W. Biddle, pay the costs of this appeal.